We have a long calendar today, so we will try to hold everybody to their allotted time. Take the cases in the order listed on the calendar. First case is United States versus Serrato-Espinoza. That's the defendants upon. Right. Ready to proceed. Yes, Your Honor. Good morning, Your Honors. My name is Ben Coleman. I'll be arguing on behalf of Mr. Serrato-Espinoza. I'd like to reserve one minute for rebuttal, if I could. In this case, I think under the Court's recent decisions in Obaldo-Figueroa and Leon Paz, it's clear that the deportation was invalid. And the issue I'd like to focus in on is prejudice. And with respect to that, I'd like to focus in on two issues. The first being whether Mr. Serrato-Espinoza is foreclosed from showing prejudice under this Court's decision in Gonzalez-Valerio because he sustained a posteriori conviction for an aggravated felony. And I'd like, as a second issue as to prejudice, move on to a more generalized discussion of prejudice. With respect to Gonzalez-Valerio, I think the issue really boils down to whether Mr. Serrato's Section 10851 conviction constitutes an aggravated felony under either the categorical or modified categorical approach. And what do we do with the guilty plea hearing transcript? Should we look at that or not? Well, it's my understanding that the Court has taken – I understand there was an order that the Court did take judicial notice of the transcript. I believe that the Court should take judicial – well, if the Court does take judicial notice of the transcript, that there's still a – the statute is overbroad and the actual plea itself is overbroad. The main reason why is that the intent that was established at the plea colloquy and also the intent that's it is clear under the statutory language that an intent to steal is not required. And in addition, the only intent that's required is an intent to temporarily deprive the owner of the vehicle. In the plea colloquy, there was no indication as to whether the intent that was established was the intent to temporarily deprive the owner or the intent to permanently deprive the owner. So even if the Court looks at the plea colloquy, there's still an overbreadth problem. Wait a minute. Are you saying temporary is insufficient? Temporary is insufficient. And the reason – and the reasoning behind that is that in Corona-Sanchez, this Court's en banc decision where this Court defined what a theft offense was, it required a criminal intent to deprive. And in order to determine what that language means, I think there are two sources that the Court can look at. Number one is the common law. At common law, the intent was – the required intent was to permanently deprive. And also, if you look at the model penal code, we've expanded that a little bit and said that the intent must be an intent to substantially deprive the owner of the property. In this case, Section 10851 does not require an intent to substantially deprive. It simply requires an intent to temporarily deprive. And the actual plea colloquy in this particular case did not establish an intent to substantially deprive. So it's our position that whether you look at the pure categorical approach or the modified approach when taking into account the plea colloquy, there is an overbreadth problem here and there is no aggravated felony. The – then the second issue I'd like to raise is whether, in general, Mr. Serrato Espinosa has established prejudice. And I think to – and looking at that, it's helpful to first take a look at the fact that the Supreme Court's only decision in this case, the landmark decision of Mendoza-Lopez, did not have any prejudice requirement at all. In that case, the defendants were improperly deprived of the opportunity to obtain discretionary relief, and the Supreme Court held that based on the deprivation of discretionary relief, that the indictment should have been dismissed. In Pro Atovar, a few years later, this Court in its en banc decision determined that there was a prejudice requirement. And what this Court said is that the prejudice requirement did not conflict with Mendoza-Lopez because in Mendoza-Lopez, the defendants were deprived of the opportunity to seek discretionary relief, and that in and of itself is prejudicial. Now, in cases since Pro Atovar, this Court seems to have expanded that and made the hurdle even greater for defendants in that you have to make a plausible showing that you would have actually received the discretionary relief. We think that that's inconsistent with Mendoza-Lopez and also with Pro Atovar. But even if that's the case, even if we have to make a plausible showing that Mr. Serrato would have received the relief, we believe that we've done so here. As an initial matter, what I'd like to focus the Court in on, and this may be or could have been pointed out better in the briefs, is that on page 199 and 200 of the appellant's excerpts of record, the district court stated that what she believed plausible grounds for relief or a plausible showing, what she believed that meant was something akin to the preponderance of the evidence standard. That a defendant had to show by something like a preponderance of the evidence that he would receive relief. I'm sorry, what are you speaking to? On pages 199 and 200 of the appellant's excerpt of record. There are two excerpts here, so there may be some confusion, but it's our excerpts of record. The Court says that on a couple of different occasions that, you know, she's looking at something at about 50 percent. Something like the preponderance of the evidence standard. That that's something that the defendant has to show. It's our submission that that standard is way too high, that at the very least this Court should remand for reconsideration under a standard that's significantly less than a preponderance of the evidence. But in any event, this Court doesn't need to remand because in three separate cases, this Court has found prejudice on facts that are that Mr. Serrato-Espinosa can easily establish. In Jimenez-Marmolejo, Arrieta, and the third case was Ubaldo-Figueroa, we cited, we created little tables in our reply brief. We compared the equities that Mr. Serrato-Espinosa had compared to those three defendants. And if you look at the various equities, Mr. Serrato-Espinosa's equities are just as strong, if not stronger, than the defendants in those three cases, and in those three cases, this Court found prejudice. So it's our position that this Court doesn't have to simply remand, but for the judge to take a look at this again under a standard less than a preponderance of the evidence, but at the very least, if that's what this Court should do, because it's our position that the district court had an incorrect conception of what prejudice required. And if there are no other questions, what I'd like to do is reserve the remaining time for rebuttal. Roberts. That's fine. We'll hear from the government. May it please the Court, Mark Rahe for the United States. I'll take the arguments in the order that defense has raised them. First off, Your Honors, we do believe that Mr. Serrato's 1999 vehicle theft conviction under California Vehicle Code 10851A is an aggravated felony, and I'd like to focus my remarks on the modified categorical approach. But most directly, I believe that defense is fundamentally incorrect when they claim that the intent requirement, as it is currently interpreted, is insufficient and that, in fact, a temporary intent is insufficient. Well, before you get there, Judge Fischer inquired just at least somewhat of your opponent about whether we should consider the transcript of which you've asked us to take judicial notice. Now, aside from the judicial notice issue, there's a problem of the fact that you never really argued the modified categorical approach in your brief. You didn't raise that to your request for judicial notice. And you, you know, it was more than a request for notice. You made an entirely new argument in there. And isn't that a problem of waiver, not raising it in your opening brief? Well, I would respectfully disagree with Your Honor. I have a section, an entire section dedicated to the modified categorical approach. This argument on the Vehicle Code 10851A was raised before the district court. We put the documents from the underlying conviction in the record, as a matter of fact. So I don't, but that is not what your argument now is based upon. You're making a different argument. I don't believe I am, Your Honor. I, if you could help me. Well, then are you saying we don't have to consider the transcript of the underlying plea colloquy? That's what your argument is based upon now, isn't it? Well, that is an addition, Your Honor. We filed a motion. It was my impression that that motion was actually already granted. In the initial brief, based on the modified categorical approach, in our brief, we relied on two documents. First was the charging document, the information. Right. Riverside County. The second one was the abstract judgment. And you made arguments with respect to those, you know, based upon those documents, but you made no argument at all based upon the transcript. Well, that's correct, Your Honor, because at that point we didn't. So it's a new argument. I don't believe it's a part. It's a part of the same argument. In fact, this Court in the Polaris-Gallon decision recently dealt with an issue of waiver and said as long as the main claim has been made, if you deduce different facts to support it, it's not waiver. In this case, we've maintained from the get-go, as early in the district court as possible, we raised it in every brief. So you're saying you just had more evidence that came to you late in the day? Correct, Your Honor. And I didn't try this case below. The gentleman who did isn't even in the office anymore. When it came to me, I made an inquiry. I made a separate inquiry to try to find this transcript and was successful in so doing. And, in fact, in their opposing brief, the defense claimed that recourse to the transcript is actually a required thing. So when I was able to provide it, I believe it adds to this Court's record. It makes for a more informed decision, and it supports the arguments that we already made in our opening brief. All right. So on the assumption, then, that we should consider it, meaning both the transcript and the argument based on that transcript, your argument is what? It's this, Your Honor. Basically, the defense is wrong when they claim that a temporary intent is insufficient. The defense claims that this Court should look to both the model penal code and the common law on that point. Last night, I reread the Corona-Sanchez decision. And in that case, this Court, sitting on Bonk, expressly rejected the model penal code's definition of theft. So in that respect, that's already one major point that needs to be taken into effect, and that's at 291F3rd at 1205, where this Court found that. What was that, 1205? I'm sorry. It's 291F3rd at page 1205. Go ahead. And this is a direct quote. This Court, sitting on Bonk, said, Although use of the model penal code is certainly a plausible approach, adoption of the standard established by the two other circuits that have construed the phrase makes more sense in a national context. In addition, the Seventh Circuit's definition is closer to the generic sense in which the term is now used in the criminal codes of most States than is the model penal codes. And, in fact, so I think that right there shows that this Court has already rejected any undue reliance on the model penal code. I'll also point out, so did the Bureau of Immigration Appeals in the case of in raid VZS, which is also cited in our brief. And as a matter of fact, at 22 Immigration and Nationality Decision, page 1338, again, this is another direct quote, However, we also would find that the Federal case law includes a somewhat broader concept of the perpetrator's intent than that embodied in the model penal code definition of the term deprived, which is what the defense advocates. So you're relying on the statement that from the Seventh Circuit that we adopted, which is that without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent? Correct. And especially that last phrase, even if such deprivation is less than total or permanent, if you were to adopt a defense formulation here, which requires somewhat of a look into did you substantially deprive the owner of the property of its major economic value, I would say that is at odds with the holding of this Court that the deprivation doesn't have to be total or permanent. And in addition, the whole point of the Taylor categorical approach is to preclude too much look at the underlying facts of a case. And I would also submit to this Court that if the defense view were adopted, that would require a case-by-case approach looking into the facts of every particular theft, what effect it had on the economic value of the property. And I believe that that would be untenable. And finally, Your Honors, I know that defense is also pointing to the common law. They refer to an intent to steal. Again, this Court sitting on Bonk and Cronus Sanchez, which set the generic Federal definition of a theft defense that is issued in this case, also rejected undue reliance on the common law. And again, this is also at page 291F3 at 1205, where the Court says, direct quote, although the common law definition informs us and is the starting point of our analysis, it is not the end point. Indeed, such an approach was rejected by the Supreme Court in Taylor. So for those reasons, I believe that the law as it is now does comply with the generic definition of a theft defense that is set forth in Cronus Sanchez. And there's basically three elements to that definition. One, a taking of property. Two, without consent of the owner. And three, with criminal intent to deprive of the benefits of ownership, even if the deprivation is less than total or permanent. In this case, one looks at the charging document, the information, which is at Supplemental Excerpts of Record, page 70. All of those elements are alleged in the underlying information. I believe it was a Chevy Beretta that was at issue. The information alleges that it was property of another, that it was taken without consent, and with the intent to deprive of title and possession. Next, we look at the abstract of judgment, which is at Supplemental Excerpts of Record, page 74. This clearly reflects a guilty plea to count one. And it's a fundamental concept that a guilty plea admits all the elements in a charging document. All of those elements are set forth in the information. And therefore, the abstract of judgment reflects a plea to that count. In the case of Velasco Medina, a burglary was proven by much the same means, with an information that alleged all of the necessary elements of a generic burglary and an abstract of judgment which reflected a plea to that count. But in addition, we have the transcript here. And I know a big part of the defense's argument was, well, how do we not know whether this was an aiding and abetting offense? That factual basis that's set forth in that transcript says you, in fact, did take the vehicle. It makes no mention of aiding and abetting any accomplice or anything of that sort. So for that reason, we do believe that the model, the modified categorical approach has been satisfied. Now, as far as defense counsel's arguments on prejudice in general, I would point out, one, I know defense started out with the idea that Mendoza-Lopez didn't require a prejudice requirement at all. That's at odds with all of this Court's recent decisions. In fact, even all the ones that have gone against the government, from Ibaldo Figueroa  And in this case, we argue that it's a heightened standard. It's normally just a plausible grounds for relief. But as this Court held in Gonzalez-Filario, where the defendant has a serious criminal history, there's a requirement, a heightened showing of unusual or outstanding equities. In this case, this particular defendant has an 11-year criminal history, starting at age 19. By the time of his removal hearing, he had three felonies and five misdemeanors. And, in fact, the PSR, page 14, even the probation officer noted that this defendant has been in constant trouble with the law since 1989. And when you look at all the facts, I know that defense, they use almost an actuarial approach in their reply brief, which is creative, but I don't think that's what the law requires. It's not a matter of just saying how many years have you been in this country, how many children do you have. That's just quantity. You have to look at the quality of those contacts. In this case, as we point out, aside from the fact that the defendant had been here for upwards of 20 years and had a lot of relatives in this country, the entire rest of the record weighed against him for purposes of 212C. As I've pointed out already, he had a substantial criminal history. His employment has been sporadic. And in the case of Matter of Roberts, the BIA held that irregularity of employment weighs against 212C. And also he points to the fact that he had children, but as the district court found, he didn't stay with the women by whom he had those children. They all lived with their mothers. Even his own declaration showed that they had more of a role in his upbringing than he did. And something like that is a direct distinction from a case like Ubaldo-Figueroa, where the defendant was married for 9 years. The record shows that he attended his school's after or his children's after-school events. He had almost 10-year employment with the same company. Even the record has something about his work ethic in there from his employer. This is why this Court can't just look at numbers and charts like it is presented in the reply brief. We have to look at the quality of the contacts. Another case that the defendant relies on is Jimenez-Marmalejo. In that case, this Court found that that defendant was borderline retarded and had a need for extraordinary family assistance. That's the kind of unusual equity that is not present in this case. But on the whole, Your Honor, we would ask that this Court adopt the district court's findings. The prejudice issue was litigated in full below. The defendant had ample opportunity to reduce evidence. The district court found that it did not meet the standard that was required. And again, and I think it's important because I don't believe anywhere in the defense reply brief did they address this, it's a heightened standard when there's a serious criminal history. And in a case like this where you have a pattern. I think we have it. If there are no further questions, the government would submit them. Okay.  Rebuttal? With respect to the section 10851 issue, I'm very familiar with Corona-Sanchez. I was intimately involved in that particular case. We agree that in Corona-Sanchez, this Court didn't simply look to the model penal code and that's it. But what Corona-Sanchez said is that the model penal code is one potential source that you look at to determine what is a theft offense. Well, wait, wait, wait, wait. I'm sort of maybe not as intimately as you. I sat on the in-bank panel, but I'm familiar with Corona-Sanchez. But the section I read does seem to suggest it doesn't have to be permanent, right? That's what we adopted anyway. It doesn't have to be permanent. And we agree with that. But there's something between a total de minimis temporary deprivation and permanency. And it's our position that in this Court's – in the three cases where this Court has considered joyriding statutes, which is Navarres-Martinez, Perez-Corona, and Huerta, in those three cases, those were the Arizona joyriding statutes. Since those are all post-Corona-Sanchez, this Court looked at what is the criminal intent to deprive. And the determination was that an intent to just temporarily, a de minimis – an intent to make a de minimis deprivation, that is not sufficient. And our position is that – Didn't he say at the plea that he took the vehicle then and there, the property of another, with the intent to deprive the owner of the property or title thereto? It doesn't say temporary. It just says it was his intent to take the property from the owner. Right. It doesn't say whether it was with the intent to temporarily deprive or permanently deprive or substantially deprive. If he had the intent to take the property or the title, is there something temporary about taking the title? But it's or. Property or the title. It's in the disjunctive. And so the – Have you taken us back about 500 years in pleading here if what you say is the way things have to be done? I don't think so. I think actually the current state is that they can plead in the disjunctive, and you can file a criminal charging document, plead in the disjunctive, and that you can go on any one of the theories alleged in the charging documents. So in this case – Well, let me ask this question. Can you cite to us any case where this concept of a temporary taking is not sufficient has been applied to anything other than a joyriding statute? To something other than a joyriding statute? Yes. The answer is no, huh? I'm not – and that's why in this case, this isn't going to be a – as the government is contending, this is going to be some dramatically problematic ruling if the court were determined that 10851 is not an aggravated felony. Well, this Court has already done that three times in the three Arizona cases, and there hasn't been a dramatic problem. And this is just simply extending those Arizona cases to the California joyriding statute. So, Judge, I think you're right that I don't think that this is going to be a tremendous problem. It's not going to affect theft statutes all across the board. Let me ask you this. When we take a look at the transcript, what do we look at? Just what he pled to? You look at the charging document, and in this case, if you decide to take a look at that plea colloquy, you would look at the factual basis for the plea colloquy. And what do we do with the judge's statement where he says after – it says, so this is a man who took the car without permission, and even after he was given an opportunity to bring it back by Ms. Horne, he still refused to bring it back and kept it. I don't think that would be appropriate under this Court's cases where it's determined that sort of the sentencing phase, the PSRs. That's not part of the factual basis. Exactly. So I saw a position that under Corona-Sanchez, which Judge Fischer, we recognize, says it doesn't have to be an intent to permanently deprive, but it has to be something in between temporary – an intent to temporarily deprive and an intent to permanently deprive. With respect to the more general prejudice issue, we recognize that Mr. Serrato has had scrapes with the law. There's no doubt about that. But when the government says that when somebody has a serious criminal record, you have to look at an elevated showing in the point to Gonzales-Valerio, they also have to look at the quality of the criminal record. In Gonzales-Valerio, the defendant was convicted of abusing his children and sexually abusing his children. The crimes in this case are not nearly as offensive. And with that, we submit, Your Honor. All right. Thank you. We thank both counsel cases submitted for decision. Next case – next cases are U.S. v. Vargas-Amaya and U.S. v. Gutierrez. Mr. Coleman, I'd like to say
judges: T.G. Nelson, Tashima, Fisher